
BK17381 PGS 982 - 992 12/09/2016 03:54:01 P
INSTR#: 2016053067 DEBRA ANDERSON
RECEIVED YORK SS REGISTER OF DEED
E-RECORDED

When recorded, return to:
American Financial Resources, Inc.
Attn: Final Document Department
9 Sylvan Way
Parsippany, NJ 07054

LOAN #:

[Space Above This Line For Recording Data]



## MORTGAGE

**WORDS USED OFTEN IN THIS DOCUMENT**
Words used in multiple sections of this document are defined below. Other words are defined in Sections 3, 5, 8, 10, 12, 17, 19 and 21. Certain rules about the usage of words used in this document are also provided in Section 15.
(A) "Security Instrument" means this document, which is dated December 9, 2016. The term "Security Instrument" includes any Riders recorded with the Security Instrument.
(B) "Borrower" means ANGELA L. BROWN, AND JOSEPH CAROTO, AS JOINT TENANTS,

who sometimes will be called "Borrower" and sometimes simply "I" or "me." "Borrower" is granting a mortgage under this Security Instrument. "Borrower" is not necessarily the same as the Person or Persons who signed the Note. The obligations of Borrowers who did not sign the Note are explained further in Section 12.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.
(D) "Lender" means American Financial Resources, Inc. .

Lender is a corporation or association which exists under the laws of New Jersey.
Lender's address is 9 Sylvan Way, Parsippany, NJ 07054.

Except as provided in Sections 12 and 19, the term "Lender" may include any Person who takes ownership of the Note and this Security Instrument.
(E) "Note" means the note signed by ANGELA L. BROWN

and dated December 9, 2016. The Note shows that its signer or signers owe Lender
ONE HUNDRED TWO THOUSAND FIVE HUNDRED THIRTEEN AND NO/100* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * Dollars (U.S. $102,513.00 )
plus interest and promise to pay this debt in Periodic Payments and to pay the debt in full by January 1, 2047.
(F) "Property" means the property that is described below in the section titled "Description of the Property" or any portion of the Property.
(G) "Sums Secured" means the unpaid balance of amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

MAINE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3020 1/01 (rev. 5/10)
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc. Page 1 of 10 Initials: 
MEEFHA10DE 0915
MEEDEED (CLS)
12/07/2016 12:46 PM PST

LOAN #:

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:
☐ Adjustable Rate Rider　　☐ Condominium Rider　　☐ Planned Unit Development Rider
☐ Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any monies or other thing of value paid by any third party, other than insurance proceeds paid under the coverages described in Section 5, for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property (see Section 10 for an explanation of "Condemnation"); (iii) conveyance in lieu of Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of the Security Instrument.
(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. When this Security Instrument refers to a requirement or restriction under "RESPA," Lender intends to abide by that requirement or restriction, even if it is not technically applicable to the Loan.
(R) "Secretary" means the Secretary of the United States Department of Housing and Urban Development or his designee.
(S) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.
(T) "Ground Rents" means amounts I owe if I rented the real property under the buildings covered by this Security Instrument. Such an arrangement usually takes the form of a long-term "ground lease."

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**
I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors and assigns), with mortgage covenants, subject to the terms of this Security Instrument, to have and to hold all of the Property to MERS (solely as nominee for Lender and Lender's successors and assigns) and to its successors and assigns, forever. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to Lenders who hold mortgages on real property. Those rights that Applicable Law gives to Lenders who hold mortgages on real property include those rights known as "Mortgage Covenants." I am giving Lender these rights to protect Lender from possible losses that might result if:
(A) Some or all of the Loan is not paid when due;
(B) I fail to pay, with interest, any amounts that Lender spends under Section 9 of this Security Instrument to protect the value of the Property and Lender's rights in the Property; or
(C) I fail to keep any of my other promises and agreements under this Security Instrument.
These amounts are the "Sums Secured."

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:
(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and
(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**
I grant and mortgage to MERS (solely as nominee for Lender and Lender's successors in interests) the Property described in (A) through (G) below:
(A) The Property which is located at　546 Ossipee Trail, Limington,

[Street][City]

Maine　04049　　　　　("Property Address").
[Zip Code]
This Property is in　YORK　　　　　　　　　County. It has the following legal description:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".
APN #: MBLU.05R//27.1;LOT27

Initials: 

## EXHIBIT A

A certain lot or parcel of land, together with any buildings or improvements thereon, situated in the Town of Limington, County of York and State of Maine, on the west side of Route 25 and being situated 1,450 feet, more or less, north of Whaleback Brook bounded and described as follows:

BEGINNING at the apparent southwesterly side of Route 25 and the southeast or easterly corner of land now or formerly of Raymond Johnson marked by a pipe;

THENCE in a generally westerly or southwesterly direction 400 feet, more or less, along said Johnson's line to other land now or formerly of Akers marked by a pipe;

THENCE parallel with Route 25, 300 feet, more or less, to a pipe;

THENCE in a generally easterly or northeasterly direction 400 feet, more or less, to Route 25;

THENCE along Route 25, 300 feet, more or less, to the point of beginning.

Subject to a right of way from Debbie D. Berry to Bruce W. Akers recorded in the York County Registry of Deeds in Book 12098, Page 6.

**LOAN #**

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;
(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"
(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;
(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;
(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and
(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains promises and agreements that vary, to a limited extent, in different parts of the country. My promises and other agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

1. **Borrower's Promise to Pay.** If I signed the Note, I will pay to Lender when due principal and interest due under the Note and late charges due under the Note. Regardless of whether I signed the Note, I will pay funds for Escrow Items as described in Section 3. I will make all payments in U.S. currency. If any Borrower makes any Loan payment to Lender with a check or other instrument that is returned for any reason (i.e., the check bounces), except when prohibited by Applicable Law, the Lender may require that any subsequent payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check (all of which must be drawn on an institution whose deposits are insured by a federal agency, instrumentality, or entity); or (d) Electronic Funds Transfer. Lender may reasonably specify which payment form is required.

Payments are only considered received when they reach the Lender's address specified in the Note, or a different address specified by Lender under Section 14 of this Security Instrument. Lender may return any payments or partial payments if the payments are insufficient to bring the Loan current. Lender may accept any payments or partial payments insufficient to bring the Loan current, but doing so will not affect Lender's rights under this Security Instrument, and Lender may still refuse such late, partial payments in the future.

If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payment to bring the Loan current. If I do not do so within a reasonable period of time, Lender shall either apply such funds or return them to me. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender shall relieve me from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

I agree that no claim or legal right I may have against the Lender will excuse my obligation to make timely payments under the Loan or to keep my other promises in this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender will be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments.

If Lender receives a payment from me for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent Periodic Payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from me to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary extra payments must be applied first to any charges for making voluntary extra payments and then as described in the Note.

If voluntary extra payments I may make or the crediting of insurance proceeds or Miscellaneous Proceeds to the Note are enough to pay principal ahead of schedule, I must still make my regularly scheduled Periodic Payments under the Note, when scheduled, without any delay or reduction of amount.

3. **Monthly Payments for Taxes and Insurance.**

(a) Borrower's Obligations. I will pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by me, and such dues, fees and assessments shall be an Escrow Item.

MAINE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3020 1/01 (rev. 5/10)
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                Page 3 of 10

Initials: _____
MEEFHA16DE  0915
MEEDEED (CLS)
12/07/2016 12:46 PM PST

BK 17391    Page 986    INSTR#: 2016053087

**LOAN #:**

After signing of the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment that I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

I will promptly send Lender a copy of all notices of amounts to be paid under this Section. I must pay Lender for Escrow Items as part of my regular Periodic Payments, unless Lender excuses this requirement in writing. If Lender excuses me in writing, I will pay all Escrow Items covered by the excuse, directly and on time. I will provide receipts proving my direct payments of Escrow Items on request and in the time period Lender requires. If Lender excuses me from paying Escrow Items to Lender and if I fail to pay any amount due for an Escrow Item directly, Lender may pay such amount under Section 9, and I will be obligated to repay Lender, plus interest at the Note rate. Lender may revoke the excuse regarding any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, I will pay to Lender all Funds (defined below), and in such amounts, that are then required under this Section 3.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called the "Funds." The Funds are pledged as additional security for all Sums Secured.

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to apply the Funds at the time specified under RESPA, but (2) not to exceed the maximum amount a lender can require under RESPA. Lender will estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

(b) Lender's Obligation. Lender will keep the Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Funds. Lender will use the Funds to pay the Escrow Items. Lender will give to me, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds and the reason for each deduction in the manner required by RESPA.

Lender may not charge me for holding or keeping the Funds, or for using the Funds to pay Escrow Items, or for making a yearly analysis of my payment of Funds or for receiving, verifying and totaling assessments and bills. Maine law requires payment of, and Lender agrees to pay me, interest on the Funds in the manner and amount set forth in Maine law.

(c) Adjustments to the Funds. If there is a surplus of Funds held in escrow, as defined under RESPA, Lender will report to me regarding the excess funds in accordance with RESPA. If there is a shortage or deficiency of Funds held in escrow, as defined under RESPA, Lender will notify me as required by RESPA and I will pay to Lender the amount necessary to make up the shortage or deficiency as required by RESPA, but in no more than 12 monthly payments.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Funds that are then being held by Lender.

4. **Borrower's Obligation to Pay Charges, Assessments and Claims.** I will pay all taxes, assessments, and any other charges and fines that may be imposed on the Property and that may be or become superior to this Security Instrument. If I am a tenant under a ground lease on the Property, I will also pay Ground Rents or payments due under my ground lease. I will also pay any Community Association Dues, Fees, and Assessments. I will do this either by making the payments to Lender that are described in Section 3 above or, if I am not required to make payments to Lender under Section 3, by making the payments on time to the Person owed them. In this Security Instrument, the word "Person" means any natural person, organization, governmental authority or other party.

I will promptly pay or satisfy all liens against the Property that may be or become superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation (but I must fully perform my agreement or this exception does not apply); (b) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced (but this exception ends when the lawsuit ends); or (c) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Borrower's Obligation to Maintain Hazard Insurance or Property Insurance; Use of Insurance Proceeds.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by: (a) fire; (b) hazards normally covered by "extended coverage" hazard insurance policies; and (c) other hazards for which Lender requires coverage, including floods and earthquakes. The insurance must be in the amounts (including deductibles) and for the periods of time required by Lender. Lender's requirements can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. If I do not maintain any of the insurance coverages described above, Lender may obtain insurance coverage at its option and charge me in accordance with Section 9 below.

Lender is under no obligation to purchase any particular type or amount of coverage. Lender's coverage will protect Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard, or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the Lender's insurance coverage might significantly exceed the cost of insurance that I could have obtained. Any amounts paid by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the Note rate from the date of disbursement and will be payable, with interest, upon notice from Lender to me requesting payment.

Lender may require me to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. I will also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from my objection.

All of the insurance policies required by Lender and renewals of those policies: (a) are subject to Lender's right to disapprove; (b) must include what is known as a "standard mortgage clause" to protect Lender; and (c) must name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewal certificates must be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts for paid premiums and renewal notices that I receive.

If I obtain additional insurance for damage to or destruction of the Property not required by Lender, I will ensure that it contains a standard mortgage clause and names Lender as mortgagee and/or as an additional loss payee.



MAINE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3020 1/01 (rev. 5/10)
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.    Page 4 of 10    Initials: _____
MEEFHAFSDE 0915
MEEDEED (CLS)
12/07/2016 12:46 PM PST

LOAN #:

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by any insurance company with regard to the Property is called "Proceeds." The Proceeds will be used to repair or to restore the damaged Property whether or not the underlying insurance was required by Lender unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Proceeds for that purpose. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Proceeds will be used to pay the Sums Secured. If any of the Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Proceeds will be paid to me. Such insurance proceeds will be applied in the order provided for in Section 2.

During the repair and restoration period, Lender will have the right to hold insurance proceeds until Lender has had an opportunity to inspect the Property to ensure the work has been completed to Lender's satisfaction. Lender will arrange the inspection promptly. Lender may disburse Proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender will not be required to pay me any interest or earnings on Proceeds. Fees for public adjusters, or other third parties I retain, will not be paid out of the insurance proceeds and will be my sole obligation.

If I abandon the Property, or if I do not answer, within 30 days a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle any insurance claim. The 30-day period will begin when the notice is given.

If I abandon the Property, do not answer the notice, or if Lender acquires the Property under Section 24 below or otherwise, all of my rights in all insurance policies covering the Property will belong to Lender, other than the right to any refund of unearned premiums I have paid. Lender may use the insurance proceeds either to repair or restore the Property or to pay the Sums Secured, whether or not then due. However, Lender's rights in those Proceeds will not be greater than the Sums Secured.

6. **Occupancy.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. **Borrower's Obligation to Maintain and Protect the Property; Inspections.** I will keep the Property in good repair. I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate or diminish in value due to its condition. In addition, I will promptly repair the Property, if damaged, to avoid further deterioration or damage unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, I will be responsible for repairing or restoring the Property only if Lender has released Proceeds for such purposes. Lender may disburse Proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, I will not be relieved of my obligation to complete such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of the due date of the monthly payments or change the amount of such payments.

Lender or its agents may enter and inspect the Property at reasonable times. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender will give me notice prior to an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** If, during the application process for the Loan, I made false, misleading, incomplete, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan ("Material Information"), Lender will treat my actions as a default under this Security Instrument. I will also be in default if I knew about or consented to any other Person giving false, misleading, incomplete, or inaccurate statements about Material Information to Lender. False, misleading, incomplete, or inaccurate statements about Material Information would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, incomplete, or inaccurate statement of Material Information. Also, if during the loan application process I failed to provide Lender with Material Information, Lender will treat this as a default under this Security Instrument. I will also be in default if I knew about or consented to any other Person failing to provide Lender with Material Information.

9. **Lender's Right to Protect Its Rights in the Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture, for enforcement of a lien which may become superior to this Security Instrument or to enforce laws or regulations); or (c) I abandon the Property, then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding, may include appearing in court, paying reasonable attorneys' fees, paying superior liens on the Property, protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Securing the Property includes, for example, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. I agree that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the Note rate. Interest on each amount will begin on the date that the amount is spent by Lender.

If I do not own but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I subsequently purchase or otherwise become the owner of the Property, my interest as the tenant and my interest as the owner will remain separate unless Lender agrees in writing.

10. **Agreements about Miscellaneous Proceeds and Condemnation of the Property.** I assign to Lender all Miscellaneous Proceeds (as defined above in subsection (M) of the section entitled "Words Used Often in This Document").

MAINE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3020 1/01 (rev. 6/19)
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                                  Page 5 of 10

Initials: _____
MEEFHA15DE  0915
MEEDEED (CLS)
12/07/2016 12:46 PM PST

LOAN #:

Miscellaneous Proceeds will be paid to Lender. Miscellaneous Proceeds include, among other things, awards or claims for damages for Condemnation. A taking of property by any governmental authority by eminent domain is known as "Condemnation."

If the Property is damaged, all Miscellaneous Proceeds will be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During the repair and restoration period, Lender will have the right to hold Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to ensure the work has been completed to Lender's satisfaction. Lender will arrange the inspection promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Miscellaneous Proceeds, Lender will not be required to pay me any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured by this Security Instrument, whether or not then due, with the excess, if any, paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

If all of the Property is taken or destroyed, the Miscellaneous Proceeds will be used to reduce the Sums Secured, whether or not then due. If any of the Miscellaneous Proceeds remain after the Loan has been paid in full, the remaining proceeds will be paid to me.

Unless Lender and I agree otherwise in writing, if only a part of the Property is taken or destroyed, and the fair market value of the Property immediately before the partial taking or destruction either is equal to, or greater than, the amount of the Sums Secured immediately before the partial taking or destruction, then a portion of the Miscellaneous Proceeds will be applied to pay a portion of the Loan. That portion will equal the Miscellaneous Proceeds multiplied by a fraction. That fraction is as follows: (a) the total amount of the Sums Secured immediately before the partial taking or destruction; divided by (b) the fair market value of the Property immediately before the partial taking or destruction. The remainder of the Miscellaneous Proceeds will be paid to me.

Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, if only a part of the Property is taken or destroyed, and the fair market value of the Property immediately before the partial taking or destruction is less than the amount of the Sums Secured immediately before the partial taking or destruction, the proceeds will be used to reduce the Sums Secured whether or not then due.

If I abandon the Property, or if I do not answer within 30 days, a notice from Lender stating that the Opposing Party (as defined below) offered to make an award to settle a claim for damages, Lender has the authority to settle any claim and collect the proceeds. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a legal action in regard to Miscellaneous Proceeds. Lender may then use the Miscellaneous Proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

I will be in default if any lawsuit or other legal proceeding is brought seeking Forfeiture of the Property or seeking any other significant reduction of Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" means a legal order or judgment that takes away some or all of my rights in the Property, whether in a civil or in a criminal proceeding. I can cure that default by causing the lawsuit or legal proceeding to be dismissed with a legal ruling that, in Lender's reasonable judgment, precludes any Forfeiture or any other significant reduction of Lender's interest in the Property or rights under this Security Instrument. If there is any award or claim for damages for the reduction of Lender's interest or rights, the proceeds of that award or claim are assigned to and will be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**11. Continuation of Borrower's Obligations and of Lender's Rights.**

(a) Borrower's Obligations. Lender may allow me, any Borrower, and any Successor in Interest of Borrower to delay or to change the amount of the Periodic Payments of principal and interest due under the Note or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Note and under this Security Instrument.

Lender may allow those delays or changes for a Successor in Interest of Borrower, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against a Successor in Interest of Borrower for not fulfilling obligations under the Note or under this Security Instrument, even if Lender is requested to do so by Borrower or a Successor in Interest of Borrower.

(b) Lender's Rights. Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property; (2) Lender accepts payments from third Persons or Successors in Interest; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 24 below to demand that I make immediate payment in full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**12. Obligations of Borrower and of Persons Taking over Borrower's Rights or Obligations.** Except as provided in Section 17, any Successor in Interest of Borrower who takes over my rights or obligations under this Security Instrument in writing and who is approved by Lender will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. I will not be released from my liability under this Security Instrument unless Lender agrees to that release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument, except as provided in Section 19.

If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender can agree with the other Borrowers to delay enforcing any of Lender's rights or to modify or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection, and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan

MAINE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3020 1/01 (rev. 5/10)
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.   Page 6 of 10   Initials: ___
MEFHA16DE 0915
MEEDEED (CLS)
12/07/2016 12:48 PM PST

charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. My acceptance of any such refund made by direct payment to me will constitute a waiver of any right of action I might have arising out of such overcharge, unless Applicable Law expressly provides otherwise.

14. **Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument must be in writing. Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless Applicable Law requires use of another method. The notice will be effective or "given" when mailed (or, if not mailed, when actually delivered) to my address, unless Applicable Law requires otherwise. Notice to any one Borrower will constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice will be addressed to me at the address stated in the section above titled "Description of the Property." A notice will be given to me at a different address if I give Lender a notice of my different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time.

Any notice that must be given to Lender under this Security Instrument will be given by delivering or mailing it to Lender's address stated in subsection (C) of the section above entitled "Words Used Often in This Document." A notice will be mailed or delivered to Lender at a different address if Lender gives me a notice of the different address. A notice to Lender required by this Security Instrument is not given until it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

15. **Law That Governs this Security Instrument; Interpretation.** This Security Instrument is governed by federal law and the law that applies in the place where the Property is located. If any term of this Security Instrument or of the Note conflicts with the Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence will not be construed as a prohibition against agreement by contract.

As used in this Security Instrument: (a) words of the masculine gender will mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular will mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

16. **Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

17. **Agreements about Lender's Rights if the Property is Sold or Transferred.** As used in this Section 17, "Interest in the Property" means any interest in the Property recognized or protected by Applicable Law including, for example, those interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, if the intent is the transfer of title by Borrower at a future date to a purchaser.

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any Interest in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, Lender will not require immediate payment in full if prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 17, Lender will give me a notice which states this requirement, following the procedures in Section 14. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

18. **Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** If I meet certain conditions, I shall have the right to reinstatement of a mortgage. These conditions are that:

(1) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if immediate payment in full had never been required;
(2) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;
(3) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and
(4) I do whatever Lender reasonably requires to assure that Lender's Interest in the Property, Lender's rights under this Security Instrument, and my obligations under the Note and under this Security Instrument continue unchanged.

However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the beginning of foreclosure proceedings within two years immediately prior to the beginning of a current foreclosure proceedings; (ii) reinstatement will prevent foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

Lender may require that I pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 18, then the Note and this Security Instrument will remain in full effect as if immediate payment in full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required immediate payment in full under Section 17 above.

19. **Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Notice of Grievances.** The Note, or an interest in the Note, together with this Security Instrument, can be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects my Periodic Payments due under the Note and this Security Instrument and also performs other mortgage loan servicing obligations under the Note, this Security Instrument and Applicable Law is called the "Loan Servicer." There can be a change of the Loan Servicer as a result of the sale of the Note; there also can be one or more changes of the Loan Servicer unrelated to a sale of the Note. The law requires that I be given written notice of any change of the Loan Servicer. The written notice must be given in the manner required under RESPA. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will

MAINE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3020 1/01 (rev. 5/10)
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.    Page 7 of 10

Initials: 
MEFHA15DE 0915
MEEDEED (CLS)
12/07/2018 12:40 PM PST

LOAN #:

contain any other information required by RESPA in connection with a notice of transfer of servicing. If the Note is sold, the Purchaser may hire a third party as Loan Servicer. In that case, the Loan Servicer, and not the Note Purchaser, will have mortgage loan servicing obligations to Borrower, except when the Note or Applicable Law expressly requires otherwise.

Lender and I agree that we will not start a lawsuit or legal proceeding or join, or be joined to, an existing lawsuit (such as a class action) that arises from the other party's actions pursuant to the Security Instrument or that claims the other party broke any promise or failed to fulfill any duty under this Security Instrument or relating to the Loan until: (a) the complaining party gives written notice in the manner provided in Section 14 to the other party; (b) the notice clearly describes the promise broken or the duty unfulfilled; and (c) the party receiving the notice is given a reasonable time to correct the problem. This provision does not apply if Applicable Law specifically authorizes a lawsuit by me against Lender under the facts in question and does not permit any cure or correction by Lender. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of default and opportunity to cure given to me pursuant to Section 24 and the demand for immediate payment in full given to Borrower pursuant to Section 17 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if I do not repay the Loan as agreed. I acknowledge and agree that I am not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor am I entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection are called "Environmental Laws."

Environmental Laws classify certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous or as pollutants or wastes by Environmental Laws and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances."

An "Environmental Cleanup" includes any removal, remedial action or other response as defined in an Environmental Law. An "Environmental Condition" means a condition that can cause or contribute to or otherwise trigger an Environmental Cleanup.

Except as provided below: (a) I will not permit Hazardous Substances to be present on the Property; (b) I will not use or store Hazardous Substances on the Property; and (c) I will not allow anyone else to do so. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. However, I may permit the presence on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property, and I may use or store these small quantities on the Property.

I will not do anything affecting the Property that violates Environmental Laws, and I will not allow anyone else to do so. I will not create an Environmental Condition affecting the Property or permit anyone else to do so or do anything which due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.

If I know of: (a) any investigation, claim, demand, lawsuit or other action by the government or by a private party involving the Property and any Hazardous Substance or Environmental Laws; (b) any Environmental Conditions, for example, any spill or leak of any Hazardous Substance; or (c) any condition relating to a Hazardous Substance that reduces the value of the Property, I will promptly notify the Lender in writing. If the government or a private party notifies me (or I otherwise learn) that it is necessary to remove a Hazardous Substance affecting the Property or to take other remedial actions, I will promptly take all necessary remedial actions as required by Environmental Laws.

This Section does not require the Lender to conduct or pay for any Environmental Cleanup.

**22. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

  (i) I default by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

  (ii) I default by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

  (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

  (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** I agree that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

**23. Assignment of Rents.** I unconditionally assign and transfer to Lender all the rents and revenues of the Property. I authorize Lender or Lender's agents to collect the rents and revenues and hereby direct each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to me of my breach of any covenant or agreement in the Security Instrument, I shall collect and receive all rents and revenues of the Property as trustee for the

MAINE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3020 1/01 (rev. 5/10)
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.    Page 8 of 10    Initials: ____
MEFHA15DE 0915
MEEDEED (CLS)
12/07/2016 12:46 PM PST

LOAN #: [redacted]

benefit of Lender and myself. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to me: (a) all rents received by me shall be held by me as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

I have not executed any prior assignment of the rents and have not and will not perform any act that would prevent Lender from exercising its rights under this Section 23.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to me. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

24. **Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Lender shall give notice to me prior to acceleration following my breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to me, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform me of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense I have to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender will have the right to collect all costs allowed by Law, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Section 22, the Secretary may invoke the non-judicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Section 24 or applicable law.

25. **Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering to the appropriate Registry of Deeds a discharge or release stating that this Security Instrument has been satisfied. I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records (unless those costs were collected in advance of my loan closing).

26. **Payment During Foreclosure.** I agree that Lender may accept rents from the Property, hazard insurance proceeds, condemnation awards, and any other monies produced by the Property or paid by me, even though Lender has demanded immediate payment in full and begun foreclosure and sale under Section 24 above. Lender may use such monies to pay off any part of the Sums Secured without affecting Lender's right to continue foreclosure and sale.

27. **Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

28. **Jury Trial Waiver.** I hereby waive any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Security Instrument and in the Rider signed by me and recorded with it.

_Angela L. Brown_　　12/7/16　　(Seal)
ANGELA L. BROWN　　　　　　　DATE

_Joseph Caroto_　　12/9/16　　(Seal)
JOSEPH CAROTO　　　　　　　DATE

MAINE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT　　Form 3020 1/01 (rev. 5/10)
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.　　　　　　　　　　Page 9 of 10

Initials: _ABJC_
MEEFHA15DE 0915
MEEDEED (CLS)
12/07/2016 12:46 PM PST

LOAN #: [redacted]

State of MAINE                                                County of ~~YORK~~ Cumberland

The foregoing Instrument was acknowledged before me this DECEMBER 9, 2016 (date) by ANGELA L. BROWN AND JOSEPH CAROTO (name of person acknowledged).

_____
(Signature of Person Taking Acknowledgement)

Jeffrey R. Vigue
Attorney at Law
_____
(Title or Rank)

_____
(Serial Number, if any)

Lender: American Financial Resources, Inc.
NMLS [redacted]
Broker: [redacted] DBA CUMBERLAND COUNTY MORTGAGE
NMLS [redacted]
Loan [redacted] wn Casey
NMLS [redacted]

MAINE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3020 1/01 (rev. 5/10)
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                    Page 10 of 10

Initials: [signature]
MEFHA15DE 0915
MEEDEED (CLS)
12/07/2016 12:46 PM PST